Serial: **122349**

## IN THE SUPREME COURT OF MISSISSIPPI

### No. 2003-M-02790

*RE: KENDALL BLAKE, M.D., JACKSON*
*BONE AND JOINT CLINIC, L.L.P. AND*
*STUART ROBINSON, JR.*

#### CONSOLIDATED WITH:

### No. 2003-M-02777

*RE:MICHAEL DULSKE, M.D.*
*CAPITOL ORTHOPAEDIC CLINIC, P.A.*
*AND STUART ROBINSON, JR.*
*INDIVIDUALLY, PETITIONERS*

#### CONSOLIDATED WITH:

### No.  2003-M-02781

*RE:STATE OF MISSISSIPPI,*
*MISSISSIPPI BUREAU OF BLDG. &*
*REAL PROPERTY MGT., MISSISSIPPI*
*DEPT. OF FINANCE &*
*ADMINISTRATION AND STUART*
*ROBINSON, JR.*

#### CONSOLIDATED WITH:

### No. 2003-M-2783

*RE: NATIONAL GENERAL INSURANCE*
*CO., AND STUART ROBINSON, JR.,*
*INDIVIDUALLY*

#### CONSOLIDATED WITH:

### 2003-M-02784

*RE: MICHAEL G. DULSKE, M.D.,*
*CAPITAL ORTHOPAEDIC CLINIC, P.A.*
*AND STUART ROBINSON, JR.*

**CONSOLIDATED WITH:**

**2003-M-02786**

*RE: JAMES MARX, F.N.P. AND STUART*
*ROBINSON, JR. INDIVIDUALLY,*
*PETITIONERS*

**CONSOLIDATED WITH**

**No. 2003-M-02787**

*RE: JAMES D. POLK, M.D., JAMES*
*MARX, NURSE PRACTITIONER,*
*BAPTIST/RICHLAND PRIMARY CARE*
*CTR., P.A. AND STUART ROBINSON,*
*JR.*

**<u>ORDER</u>**

¶1.     Before the Court are Petitions for Writ of Mandamus filed by attorney Stuart Robinson, Jr., and his clients (collectively Robinson), seeking recusal of Circuit Judge Tomie T. Green in seven pending cases and all future cases in which Robinson appears as counsel.[1]   Robinson

---

[1]Motions for Recusal were filed in seven civil actions pending in the Circuit Court of the First Judicial District of Hinds County, styled as follows:
1. *David Alexander Clein vs. Kendall T. Blake, M.D. and Jackson Bone & Joint Clinic, LLP*; 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 CIV
2. *Lee Perry vs. National General Insurance Company, et al*;   251-00-520 CIV
3. *Cheryl Havard v. Michael G. Dulske, M.D., Capital Orthopaedic Clinic, P.A., Mississippi Surgical Center Limited Partnership and Mississippi Surgical Center Inc.*;   251-01-105 CIV
4. *Sheila Sanders v. American National Life Insurance Company of Texas and James Marks, F. N. P.*;   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 CIV
5. *James Robert Prince v. The State of Mississippi, Mississippi Bureau of Building and Real Property*

2

claims that Judge Green "demonstrates probable bias (sic) and a lack of impartiality as regards [Robinson], such that her Honor should be recused from this case, and any other cases currently pending before her Honor, or subsequently assigned to her Honor, wherein [Robinson] is counsel." Although Judge Green sharply disputes Robinson's interpretation of events, the factual basis for Robinson's claim is essentially undisputed.

## BACKGROUND FACTS

¶2. The controversy apparently began in a lawsuit filed by David Alexander Clein against Kendall Blake, M.D., et al., when Judge Green set the matter for trial. Robinson, who was employed as counsel to represent the defendants, requested time to confer with experts regarding potential conflicts. Judge Green denied the request.[2] When Robinson later learned that all three of his retained experts would be unavailable due to "existing conflicts with the trial date, and the death of one (1) expert," he filed a motion for continuance, which was denied, followed by a renewal of the motion for continuance which also was denied. Robinson

_____

*Management, Mississippi Department of Finance and Administration and Joe Does 1 through 50*; 251-02-541 CIV

6. *The Wrongful Death Beneficiaries of Harold Rogers, Deceased v. James D. Polk, M.D., James Marx, Nurse Practitioner, and Baptist/Richland Primary Care Center, P.A., Unnamed Known Physicians and Nurses;* 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 CIV

7. *Deborah Dixon vs. Michael Dulske, M.D. and Capitol Orthopaedic Clinic, P.A.*; 251-03-407 CIV

[2]Although we do not doubt Robinson's statement since no one disputes it, the record contains no evidence of his request or Judge Green's denial. However, the record does reflect that Robinson "approved and consented to" an "Agreed Scheduling Order" dated May 2, 2001, which set the matter for trial on February 11, 2002. The order recites that it was entered "on the joint motion of the plaintiff and defendant."

then applied for a writ of mandamus, asking this Court to intervene. His request was denied, and the case proceeded to trial on February 11, 2002.[3]

*Expert Controversy.*

¶3.    During trial, an issue surfaced involving Robinson's ability to produce one of his experts, Dr. Greer Richardson, for live testimony, rather than submitting his testimony by deposition. Having been informed long before trial that Dr. Richardson had a conflict[4] with the trial date, Robinson had already deposed him for trial purposes. However, Dr. Richardson informed Robinson by letter dated August 29, 2001, that, if he was needed to appear live at trial, he would try to make arrangements to get there. In his response to Dr. Richardson the next day, Robinson said he would like for Dr. Richardson to appear live, and he asked Dr. Richardson to keep him advised of his availability.

¶4.    On October 22, 2001, Dr. Richardson indicated to Robinson's co-counsel that, due to the conflict, he did not think he could appear. Thereafter, several contacts were made in an unsuccessful attempt to arrange a flight schedule which would allow Dr. Richardson to appear live. On January 9, 2002, Dr. Richardson informed Robinson that he would not be able to appear.

¶5.    Apparently, Dr. Richardson later learned that there was a possibility he could arrange to get to Jackson for the trial. Although the record does not reflect how this new development

---

[3]Since the petitions in these matters were filed, the judgment in the ***Clein*** case has been appealed to this Court and we have before us the complete record and briefs of the appeal. We have examined this record, along with the record offered in support of the petitions for writs of mandamus, and find the entire trial record fully supportive of the conclusions which we reach here.

[4]This was one of the expert conflicts that led to Robinson's motion for continuance and application to this Court for mandamus.

was communicated from Dr. Richardson, Robinson's co-counsel informed plaintiff's counsel by letter dated February 5, 2002 (six days before trial) of the possibility of Dr. Richardson's live appearance. The letter stated, "We don't know one way or the other as of yet."

¶6. The trial began, as scheduled, with Dr. Richardson still unsure about his ability to travel to Jackson for live testimony. During the week of trial, the subject apparently came up (although we aren't told how), and Robinson apparently informed Judge Green that Dr. Richardson might be able to testify live. Judge Green responded by saying, "So what I offered to you ahead of time,[5] you now want to say if he doesn't come then you want to have the deposition by tape?" Robinson responded in the affirmative.

¶7. At this point, it appears to this Court that the issue had been clearly and respectfully presented by Robinson to Judge Green, and that she clearly understood. What is unclear is why the matter didn't simply drop until time for Dr. Richardson's testimony, at which time he would either walk to the witness stand, or Robinson would offer his deposition testimony. For whatever reason, Judge Green did not let the matter drop. The exchange that next took place cannot be reconciled with anything previously stated or anything elsewhere in the record. For clarity, we will recite the relevant portion of the record provided to us, verbatim:

**THE COURT**:     So, again, Mr. Robinson, Dr. Richardson will be here correct?

**MR. ROBINSON**:   He has booked a flight and we anticipate him being here. I would say 99.99 percent chance that he will be here.

**THE COURT:**    Mr. Robinson, why are you playing games with words. I knew whether my witnesses were going to be at trial when I was practicing law. Why is it that you don't know whether Dr. Richardson will be here or not?

---

[5]Judge Green had previously approved a deposition of the expert.

**MR. ROBINSON**: Because he previously advised us that he would not be able to be here for the trial and we've also had one witness die, one of our experts, so I'm a little - -

**THE COURT:** I didn't ask you about nobody else but Dr. Richardson. I'm saying why don't you know whether Dr. Richardson will be here or not. I'm well aware that tomorrow none of us may be here. But I want to know why you can't tell me that Dr. Richardson will be here. He's your expert.

**MR. ROBINSON**: Yes, ma'am. What I said a few minutes ago, he previously advised us that he could not make it . . . . We're going to call him by video in accordance with the rules.

**MR. STEVENS:** Dr. Leventen is the one that was indicated to this court was too old to travel.

**THE COURT:** Hold on. If you say in accordance with the rules one more time, counsel, I know the rules. I understand the rules very well. So from now on you don't have to put that editorial at the end of every statement because every time that you've said it have you noticed I hesitated. I'm counting. I understand very well what the rules are, but this morning you can't tell me whether Dr. Richardson will be here and you come up with this nice way of saying you can't guarantee, you're 99 percent sure that he'll be here, but if he doesn't , you want to use his deposition.

We have been arguing over this back and forth for a year now, Mr. Robinson, and I just cannot believe that you couldn't find you a couple of experts that would  not be a problem that the plaintiff would have the benefit of their testimony and be able to rebut or cross-examine. . . . But it's their case. And if they don't want that doctor here live to testify to that jury, that's fine with me. That's what I told them when they decided to make the interlocutory appeal. But it doesn't bother me when people appeal. That's just the nature of the beast. But for some reason attorneys think they can threaten the judge by saying they want to take an interlocutory appeal. If I were a younger lawyer that might would work, but I been practicing too long. So, in terms of that, I'll just need to have the depositions so that when you do make your objections I'll know how I'm going to rule because I will have read the depositions. But I am not as dumb as you think. I know very well what Mr. Robinson and the other attorneys are doing when they are playing the game with Dr. Richardson, and it is a game.

**MR. STEVENS**: And I think you're a lot smarter than me by the way.

6

**THE COURT:** If he is going to be here, he's going to be here. If he isn't, he isn't. But they are taking a chance on me because they may not have Dr. Richardson either way.

\* \* \*

**THE COURT:** Counsel, I been reading the file and I've read the file for a number of times and every place I did a second look at it today and every place there was an indication that Dr. Richardson wouldn't be here.

**MR. STACK:** That he wasn't going to be here?

**THE COURT:** Yes, sir.

**MR. STACK:** He had a flight and he was prepared to be here and testify Friday and that was why we - -

**THE COURT:** Then what's the problem if he was going to be here Friday to testify.

**MR. STACK:** Right.

**THE COURT:** Okay. Well, what's the problem.

**MR. STACK:** Well, I thought Your Honor said we weren't going to have court on Friday.

**THE COURT:** Right. And you only came up to tell me that he wasn't going to be here on Friday after you learned I said I wasn't going to be here. So what's the problem with him coming Friday anyway?

**MR. ROBINSON:** If I may address, Your Honor. Your Honor called and spoke with Dr. Munn. If the court thinks that we're playing games I don't have any problem with you calling Dr. Richardson. We work with the facts we're given and end up doing the best we can.

**THE COURT:** I asked you whether Dr. Richardson on Monday was going to be here on Friday.

**MR. ROBINSON:** And I gave you an honest answer based upon the information available to me.

**THE COURT:** Counsel, I've never had anyone at any trial at any time I've been on this bench tell me in the terms that you told me Monday, that you may or may

7

not have an expert. This is the first time anybody walked in an told me, well, we don't know because our expert is at a convention. You knew a year ago, a year ago, that Dr. Richardson was not going to be here. Is that correct?

**MR. ROBINSON:** Your Honor, I've given you the information as honestly as I can. If you want me to take the stand and give it to you that way or you can call Dr. Richardson. All I can do is give you - -

**THE COURT:** I want you to answer my question. You knew a year ago that Dr. Richardson was not going to be here; am I correct?

**MR. ROBINSON:** When you set this case for trial, we checked and there was a conflict. These things were planned a year in advance. That's why we moved for a continuance, which you denied.

**THE COURT:** And you appealed it and the Supreme Court denied it.

**MR. ROBINSON:** That's my problem, yes, ma'am.

**THE COURT:** And evidently they looked at the fact that you knew a year ago that Dr. Richardson couldn't be here, didn't you?

**MR. ROBINSON:** One of them agreed with us. And, Judge, I can only do what I can do. And if there is something else you tell me to do, I'll do my best to accommodate the court.

**THE COURT:** Get Dr. Richardson here on Friday. You said you'd do what I wanted you to do, and we'll have him testify on Saturday morning.

**MR. ROBINSON:** I'll do the best I can. I cannot tell you that he'll definitely be here.

**THE COURT:** You couldn't tell me anything Monday.

**MR. ROBINSON:** I gave you an honest answer Monday, and I'm giving you an honest one today.

**THE COURT:** No, you did not give me an honest answer. You're not giving me an honest answer today. I asked you about the Supreme Court ruling and you told me one person agreed with you. Do you have an order from that one person?

**MR. ROBINSON:** No, I don't have an order from that one person.

**THE COURT**: So why did you say that?

**MR. ROBINSON:** Because it was the truth.

**THE COURT**: But why did you feel it was necessary to say that to me, Mr. Robinson?

**MR. ROBINSON**: Judge, I can see we're going to disagree. I respect Your Honor, and I will do whatever I can to accommodate the court and abide by the ruling of the court. There's nothing more than I can do.

**THE COURT**: I'll ask you again. Then why did you say to this court that one person agreed with you? What was the reason for you to say that to me, Mr. Robinson?

**MR. ROBINSON**: I can't remember the context it came up but that is an accurate fact.

**THE COURT**: And what's the significant of that?

**MR. ROBINSON**: None.

**THE COURT**: So why did you say it?

**MR. ROBINSON**: I cannot tell you, Judge.

**THE COURT**: I know you can.

**MR. ROBINSON**: I guess in responding to your questions.

**THE COURT**: I do understand, Mr. Robinson. You know something, there has not been a single questions that I've asked you that you have answered directly, not a single one. And we expect witnesses to get on the stand and answer the question that we direct to them. But how can we do that when I have not had you this entire case when I asked you a question to give me a direct answer.

**MR. ROBINSON:** Your Honor, I feel like I have. We'll just have to agree to disagree I guess.

**THE COURT:** I don't know whether we do or not. But I do expect integrity in the attorneys getting up here before me.

**MR. ROBINSON:** You have that.

9

**THE COURT**: No, sir, I do not, Mr. Robinson. Anytime I ask you a questions and you can't give me a direct answer, I'm not sure I got integrity or not. Now I knew when I said that I wouldn't be here Friday exactly what was going to happen and I could have written it down and it still would have been true that the moment I said I was not going to be here Friday, you-all would come in and tell me Dr. Richardson couldn't get here for Saturday.

**MR. ROBINSON:** Well, if you believe that you'll - -

**THE COURT**: Can he get here for Monday?

**MR. ROBINSON**: Yes, And if Your Honor, if you want to put me on the stand or even Dr. Richardson to - -

**THE COURT**. He can be here for Monday?

**MR. ROBINSON**: Yes, ma'am.

**THE COURT**: We'll have him here on Monday morning. Bring the jury in. I assume that that means then that I don't have to rule on any of these objections. We'll have Dr. Richardson live on Monday morning, and it's absolutely timely, simply because we are out of term. . . .

¶8. After diligent search by the members of this Court, we are unable to locate within the transcript or other papers provided to us,[6] the source of Judge Green's anger and vitriol toward Robinson concerning production of Dr. Richardson.

¶9. In his brief, plaintiff's counsel attributes the controversy to his assessment of Robinson as "difficult and frustrating;" one who "plays with words, refuses to give a straight answer and then blames everyone and everything around when their (sic) hand is called." Early in his brief, plaintiff's counsel assures us that we will learn, "through a careful dissection of defense exhibits, they[7] (sic) are playing loose with the facts . . . ." Finally, plaintiff's counsel assures

_____

[6]We note that several pages of the transcript which contain relevant discussion were not provided to us by either party or Judge Green.

[7]We take this to mean "Robinson."

10

us that it will "become evident" that the controversy "had nothing to do with the Judge and everything to do with a perjuring expert witness who caused his frivolous defense to crumble before his very eyes."

¶10.    Finding ourselves intrigued by these bold and confident averments from plaintiff's counsel concerning evidence we had apparently missed, we redoubled our effort and again diligently searched each page, paragraph and line of the record for the promised evidence of Robinson's questioned conduct.    We found nothing.    Not a single jot nor tittle in the transcript or exhibits before this Court[8] demonstrated the slightest disrespect or insult from Robinson directed toward the Court.    We found nothing to indicate that Robinson was playing "loose with the facts."    And we found nothing whatsoever to indicate that Robinson's motion was related to an alleged "perjuring expert witness." [9]

¶11.    Plaintiff's counsel claims that after Judge Green stated she would not hold court on Friday, Robinson "curiously declared that Dr. Richardson could be available – but only on Friday."  The transcript does not bear out this claim.

¶12.    Plaintiff's counsel claims that when Judge Green offered to allow Dr. Richardson to testify on Saturday, the offer was "inexplicably rebuffed by defense counsel."    Again, the transcript does not bear out this claim.

---

[8]Both plaintiff's counsel and Judge Green were afforded the opportunity, and indeed encouraged, to provide this Court evidence of Robinson's alleged improper behavior.

[9]Indeed, Plaintiff's counsel presented us with no evidence whatsoever of any "lying witness." While such an inflammatory, unsupported statement (should a trial judge improperly allow it to be made) might serve to sway a jury, it has no influence here and, if made in bad faith, borders on contempt of court.

11

¶13.     Finally, plaintiff's counsel claims that Robinson "lacked the requisite respectful tone" as he "continued to allege that Dr. Richardson was not available for any other times." We find no instance in the record where Robinson ever alleged that Dr. Richardson was available only on Friday, and at no other time.

¶14.     This litany of unreliable representations by plaintiff's counsel compels us to place little reliance on his briefs and we strongly urge plaintiff's counsel to carefully consider and check the accuracy of his representations to this Court before signing them.

¶15.     In support of his motion, Mr. Robinson cites from the trial transcript other examples of hostile statements by Judge Green, including the following:

JUDGE GREEN:     You don't have to suggest to me what to do. I know what to mark for identification counsel.

* * *

MR. ROBINSON:     No, but he got one of the 1988 that was stamped in the Jackson Bone & Joint Clinic stamp when the box fill (sic) on his foot which I believe depicts all of his calluses (sic), I believe the 2nd, 4th, & 5th.

JUDGE GREEN:     Well, I don't need your belief. I need an answer to my question. I'll ask again. Whose medical history did he have? Did he have Dr. Hughes?

* * *

MR. ROBINSON:     The Mississippi Supreme Court requires that you put on evidence of a crime, what you have to show that's probative of dishonesty.

JUDGE GREEN:     Thank you, Mr. Robinson. I missed that in law school.

¶16.     The record provides no justification whatsoever for Judge Green's animosity and sarcasm toward Robinson. We recognize and endorse a trial judge's duty to control the courtroom, using reasonable measures to efficiently move matters along and keep over-

zealous counsel in check.   However, the professional obligations of dignity, respect and decorum is not limited to counsel.   Canon 1 of the Code of Judicial Conduct states, "A judge should participate in establishing, maintaining, and enforcing high standards of conduct, and shall personally observe those standards so that the integrity and independence of the judiciary will be preserved."

*Incomplete Record.*

¶17.   After the jury returned a verdict for the plaintiff, defendants attempted to obtain a certified record for appeal.   In the process, it was discovered that some of the exhibits were missing.   Also missing were portions of other exhibits, pleadings, jury instructions, and the signed pretrial order.   This led to a hearing on October 14, 2003, before Judge Green in which she questioned counsel regarding the missing items.   Robinson wanted the lost items in the record for appeal.   Some of the items, including the signed pretrial order, could not be found. This exchange followed:

JUDGE GREEN:   Well, it doesn't have to go in.  A pretrial order is not required.  That's my preference.   But no pretrial order has ever been a requirement for a trial. It just binds the parties.

MR. ROBINSON:   That's the only point, Your Honor.  That's why we want it in there.

JUDGE GREEN:   Well, I just said then we'll have to deal with this, and you said you had an objection to it.

MR. ROBINSON:   I've got an objection to the original submitted to Your Honor not being part of the record.  I would like it found.

JUDGE GREEN:   You've lost your mind, Mr. Robinson.  What's the next thing that's lost? You want to find it, is that what you're saying?  Is that what you're saying, Mr. Robinson?

MR. ROBINSON: I'm saying I would like it found naturally because we would like to have it for appeal. I don't know another way to state it. I think Your Honor would be as concerned as we are that we don't have an accurate record for appeal. We did not create this problem.

*Requests for Transcript of the Hearing*

¶18. The October 14, 2003, hearing on Plaintiff's Motion to Deem Record Complete followed over a year and a half of exchanges among counsel and the Circuit Clerk's office regarding the missing items and the appeal record. When plaintiff's counsel noticed the motion for hearing, Robinson sent an October 8, 2003, letter to the Hinds County Court Administrator, requesting a court reporter for the hearing.

¶19. On October 14, 2003 (the day of the hearing) Melissa M. McCarty, a paralegal with Robinson, sent another letter to the Court Administrator, confirming a voice mail in which Robinson confirmed that he wished to obtain a copy of the transcript of the hearing.

¶20. On November 3, 2003, Robinson sent a letter to the Court Administrator, requesting the transcript.

¶21. On December 15, 2003, McCarty wrote the Court Reporter and complained of numerous unreturned messages left with her concerning the transcript. The letter also confirmed a conversation which took place on November 28, 2003, in which the reporter stated that another 10 to 14 days would be required. This letter again requested the transcript.[10]

¶22. On December 29, 2003, when Robinson filed the Petition for Writ of Mandamus seeking recusal of Judge Green, he still did not have the transcript of the October 14, 2003, hearing. Robinson states in his motion:

[10]The efficient administration of justice requires cooperation, diligence and professionalism, not only from lawyers and judges, but also from court reporters and court administrators.

14

At the start of this hearing, Judge Green asked the undersigned why he wished a court reporter to transcribe the proceeding. The undersigned advised Judge Green he wished to maintain a record of the proceeding. Defendants and the undersigned have, on multiple occasions, requested from the Court a copy of the transcript of the October 14, 2003 hearing on Plaintiff's Motion to Deem Record Complete, but have yet to receive the same.

¶23.    Upon receiving the motion, this Court issued an order to show cause why the transcript had not been provided to Robinson. The court reporter then transcribed the hearing on March 30, 2004, almost six months after the hearing. Judge Green and the court reporter jointly responded to the "show-cause" order, blaming the failure to produce the transcript on the style of the show-cause order. Judge Green also stated in her response that "there may have been miscommunication between the petitioners and the court reporters," and that she was "bewildered that the Petitioners would claim to have repeatedly requested the transcript . . . . There has been no refusal to produce the transcript. Had the Petitioner brought the oversight to the court's attention, then it could have been handled promptly. . . ."

¶24.    At the time she filed her response to the "show-cause" order, Judge Green had in her possession for three months a copy of the Petition for Writ of Mandamus (including Exhibit 4 which contained the letters requesting the transcript). Thus, giving Judge Green the benefit of the doubt concerning Robinson's prior requests, she certainly was fully aware of the request for the transcript after reading Robinson's petition. Yet, nothing was done for months, and until this Court issued the "show cause" order. Thus, it is Judge Green's bewilderment that is bewildering. The transcript should have been provided within a reasonable time after it was requested. It wasn't. Robinson persuasively argues that the failure to provide the requested transcript is yet another indication of Judge Green's animosity toward him.

15

*Judge Green's Response to the Petition.*

¶25.    In addition to her response to the "show-cause" order, Judge Green filed a response to the Petition for Writ of Mandamus.  Therein, she made the following statement:

> Trial judges of a not-traditional gender and/or hue are not always well received by attorneys who prefer more traditional jurists.  Many attorneys take offense at having to appear before or be subjected to rulings or instructions of the cout (sic).  However, I have never had a situation where an attorney intentionally misrepresented the court's conduct to an appellate court in an attempt to malign the court's character and integrity.  Any and all responses by the court, the petitioning attorney, or any attorney for that matter, are directly responsible (sic) to the attorney's conduct, misconduct or failures.

¶26.    Judge Green then implores us to read the "full transcript submitted by the petitioners in the context of pretrial hearings that petitioners chose not to request court reporters."  She asks us to "consider the motives or lack of motive of the judge, as well as those of the Petitioners."  She further characterizes Robinson's averments as "false allegations" and efforts at "intimidation, harassment and retaliation" against the court.  She states that the claims "are without merit, are frivolous, and should be dismissed."  She accuses Robinson of "evasiveness in response to the court's inquiry."  She claims to be frustrated at Robinson's "tactics and misrepresentations to the court."  She accuses him of using "questionable tactics" in "manufacturing a case for recusal by the court," and in "soliciting or entertaining unfounded allegations."

¶27.    Other than these broad-brush, unsupported attacks on Robinson, Judge Green does not respond to the specific issues raised by Robinson.  Nor does she direct us to a single instance of "false allegations," "intimidation," or  "evasiveness."  If such conduct occurred, there is no suggestion of it in the record presented to us.

## ANALYSIS

¶28. For the sake of clarity, we point out that judges and lawyers are not required to like each other. They are, however, required to maintain a reasonable level of respect, decorum and professional courtesy. This Court has a solemn duty "to guard jealously 'the public's confidence in the judicial process'" *Dodson v. Singing River Hosp. Sys.*, 839 So. 2d 530, 534 (Miss. 2003) (quoting *Liljeberg v. Health Servs. Acquisition Corp*., 486 U.S. 847, 864, 108 S. Ct. 2194, 100 L. Ed. 2d 855 (1988).

¶29. Lawyers are expected, even required, to represent their clients with zeal and passion. This sometimes leads to particularly aggressive statements made on the spur of the moment, in an effort to attain for the client every permissible advantage and gain.

¶30. Judges are expected to control the courtrooms and move cases along, so that respect for the judiciary and the legal system is maintained. Sometimes, frustration and impatience are brought on by the judge's perception of how attorneys could better handle matters before their court. An attorney's attempt to properly represent his or her client can, on occasion, be viewed by a trial judge as an attempt to delay or obfuscate. When this happens, trial judges have little time to fully analyze the motives of lawyers. The natural reaction of all but the most disciplined judges will sometimes lead to displays of anger, frustration and surprising vocabulary. This often will result in the appearance of personal animosity which, in turn, can provoke fear of prejudice.

¶31. But demonstrating that a lawyer was overly aggressive, or that a judge was grouchy, irritated and less than circumspect in selection of vocabulary, has little to do with proving impartiality. Rarely do judges allow their frustration, anger, impatience and irritation to

influence the dispensation of justice. However, recusal is required if a personal tension between a lawyer and judge would lead a reasonable person to question whether the judge would have a personal bias or prejudice concerning the lawyer's client. *See Davis v. Neshoba County Gen. Hosp.*, 611 So. 2d 904, 906 (Miss. 1992).

¶32. We are now left to sort through this unpleasant series of events and determine whether Robinson has met the burden necessary for recusal of Judge Green, not only in the *Clein* case which has already proceeded to trial, but in all cases in which he is counsel and Judge Green is the trial judge.

¶33. The oath of office taken by all trial judges, including Judge Green, requires that judges "administer justice without respect to persons," and that they "faithfully and impartially execute and perform" all of their duties.

¶34. The Code of Judicial Conduct which guides the behavior of judges requires recusal "in proceedings in which their impartiality might be questioned by a reasonable person knowing all the circumstances . . . ." Canon 3(E)(1). This is so, even if none of the specific reasons for recusal cited in the Canon apply. Comment, Canon 3(E)(1).

¶35. This guideline was applied by this Court in *McFarland v. State*, 707 So. 2d 166 (Miss. 1997), which held:

> A presumption exists that the judge, sworn to administer impartial justice, is qualified and unbiased, and where the judge is not disqualified under the constitutional or statutory provisions, the propriety of his or her sitting is a question to be decided by the judge, and is subject to review only in case of manifest abuse of discretion.

*Id.* at 180 (citations omitted).

18

¶36. In considering recusal motions, this Court will not look exclusively at the incidences complained of, but must take into account all of circumstances. *Dodson*, 839 So. 2d at 534. We agree with a court from a sister state that, in viewing all circumstances, recusal is required only where the judge's conduct would lead a reasonable person, knowing all the circumstances, to conclude that the "prejudice is of such a degree that it adversely affects the client." *Town Centre of Islamorada v. Overby*, 592 So. 2d 774, 775 (Fla. Dist. Ct. App. 1992).

¶37. In the case sub judice, we have no constitutional or statutory claim for recusal. Thus, the matter is left to Judge Green to determine whether she should recuse, and this Court will not reverse her decision, absent manifest abuse of discretion.

¶38. Nevertheless, the record before us clearly demonstrates that Judge Green entertained a high degree of hostility toward Robinson and that her conduct during the exchange regarding Dr. Richardson's availability to testify was not an isolated loss of temper. Later, in proceedings regarding the misplaced exhibits and again when Robinson made a routine request for a court reporter, Judge Green's animosity continued and appeared to increase. While we do not know the reason for this demeanor on her part, nothing in the record, in the briefs of the plaintiff, or in Judge Green's responses indicate any actions on the part of either Robinson or his co-counsel suggesting that her actions were responsive to improper conduct on their part. When invited to explain the circumstances, Judge Green made conclusory allegations, including those of racial and gender prejudice, which are totally without support in the record.

¶39. In spite of the leeway given judges in the management of their courts, here we find nothing before us which would explain Judge Green's conduct. We further find that her continued hostility even beyond the trial to post-trial efforts to obtain an accurate record is such

19

as to cause a reasonable person aware of all the circumstances to question whether Robinson's clients can get a fair hearing in her court. Additionally, her totally unsupported and reckless charges of gender and racial prejudice pulled from thin air were totally inappropriate and are further evidence of her hostility.

¶40. For reasons we need not discuss here, it has not been this Court's practice to grant prospective recusal, and we decline to do so now. We shall review any request for recusal in future cases on a case-by-case basis.

¶41. IT IS THEREFORE ORDERED that the petitions are granted to the extent that they seek the recusal of Circuit Judge Tomie T. Green in each of the seven pending cases in which Stuart Robinson, Jr. is attorney of record and Judge Green is recused in these seven cases:

1. *David Alexander Clein vs. Kendall T. Blake, M.D. and Jackson Bone & Joint Clinic, LLP*; 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 CIV

2. *Lee Perry vs. National General Insurance Company, et al*; 251-00-520 CIV

3. *Cheryl Havard v. Michael G. Dulske, M.D., Capital Orthopaedic Clinic, P.A., Mississippi Surgical Center Limited Partnership and Mississippi Surgical Center Inc.*; 251-01-105 CIV

4. *Sheila Sanders v. American National Life Insurance Company of Texas and James Marks, F. N. P.*; 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 CIV

5. *James Robert Prince v. The State of Mississippi, Mississippi Bureau of Building and Real Property Management, Mississippi Department of Finance and Administration and Joe Does 1 through 50*; 251-02-541 CIV

6. *The Wrongful Death Beneficiaries of Harold Rogers, Deceased v. James D. Polk, M.D., James Marx, Nurse Practitioner, and Baptist/Richland Primary Care Center, P.A., Unnamed Known Physicians and Nurses;* 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 CIV

7. *Deborah Dixon vs. Michael Dulske, M.D. and Capitol Orthopaedic Clinic, P.A.*; 251-03-407 CIV

¶42.   IT IS FURTHER ORDERED that the petitions are denied to the extent that they   request

Judge Green's recusal in all future cases in which Robinson appears as counsel.

¶43.   SO ORDERED, this the 23<u>rd</u> day of March, 2005.


                                       /s/ Jess H. Dickinson
                                       JESS H. DICKINSON, JUSTICE,
                                       FOR THE COURT


**EASLEY AND GRAVES, JJ., WOULD DENY.  DIAZ, J., NOT PARTICIPATING**.