78 So.3d 308 (2012)
Deric BAILEY
v.
STATE of Mississippi.
No. 2010-KA-00366-SCT.
Supreme Court of Mississippi.
January 26, 2012.
*311 Office of Public Defender by Virginia Lynn Watkins, William R. Labarre, Alison Oliver Kelly, Frank L. McWilliams, attorneys for appellant.
Office of the Attorney General by Billy L. Gore, attorney for appellee.
EN BANC.
CARLSON, PRESIDING JUSTICE, for the Court:
¶ 1. Deric Bailey was convicted by a jury in the Circuit Court for the First Judicial District of Hinds County of deliberate-design murder under Mississippi Code Section 97-3-19(1) (Rev.2006). Bailey was sentenced to life in prison. On appeal, Bailey's conviction and sentence were reversed by the Court of Appeals and the case was remanded for a new trial. Bailey v. State, 952 So.2d 225 (Miss.Ct.App.2006). Ultimately, this Court denied Bailey's petition for writ of certiorari. Bailey v. State, 951 So.2d 563 (Table) (Miss.2007). At his second trial, Bailey again was convicted of deliberate-design murder and sentenced to life in prison. The trial court denied Bailey's motion for judgment notwithstanding the verdict, or in the alternative, a new trial, and Bailey timely filed this appeal. For the reasons discussed below, we find that Bailey's claims are without merit, and today we affirm Bailey's conviction of deliberate-design murder and his sentence of life imprisonment.

FACTS AND PROCEEDINGS IN THE TRIAL COURT
¶ 2. It is undisputed that on October 24, 2001, Deric Bailey shot and killed Thomas Ryan Evans in the parking lot of the Short Stop Corner Grocery in Jackson. Bailey first was tried on May 12, 2004, and he was convicted and sentenced to life in prison for deliberate-design murder. Bailey appealed his conviction, and the Court of Appeals reversed and remanded the case for a new trial. Bailey, 952 So.2d at 241. On December 7, 2009, Bailey again was tried, convicted of deliberate-design murder, and sentenced to life imprisonment in the custody of the Mississippi Department of Corrections. Bailey now appeals his conviction and sentence.
¶ 3. On the evening of October 24, 2001, Fred Braddock dropped off Bailey and James Bernard Pickens at the Short Stop grocery, on the corner of Corinth and Lynch Streets in Jackson and drove away. Braddock testified that when he drove by the store later that evening, he had seen Bailey and Pickens standing at the window of Thomas Ryan Evans's truck. Braddock then stated that he drove by again and had seen Bailey and Pickens running away from the store, down Corinth Street. Braddock testified that after he had heard about a shooting that had occurred at the Short Stop that same night, he had asked Bailey if he had been involved in the murder. Braddock stated that at first Bailey had denied involvement, but then he (Bailey) had said that he had shot Evans.
¶ 4. Billy Donnerson owned a body shop on Lynch Street, adjacent to the Short Stop grocery. Donnerson testified that on the evening of the murder, he had been *312 sitting outside the body shop when he heard a gunshot. Donnerson stated that he looked up and saw two young men leaving in Evans's truck. Donnerson, like Braddock, stated that the two men took off down Corinth Street. Donnerson testified that, because of the way the light reflected off the driver's side window of Evans's truck, he knew that someone had fired a gun into the truck. While dialing for help, Donnerson stated that the truck had reversed slowly and then the driver, Evans, had slumped over inside the truck.
¶ 5. Donnerson's testimony at Bailey's second trial, eight years after the murder, differed from the statement he gave to the police the night of the murder. In his initial statement, Donnerson said that when he heard the gunshot, he had looked up and had seen someone reaching into Evans's truck, and that as the two men ran away, one of the men was looking at something in his hand. At the second trial, Donnerson testified that, as the two men ran away, they were smiling and laughing. Donnerson stated at the second trial that he did not recall seeing the two men reach into Evans's truck, or one of them looking at something in his hand. During cross-examination at the second trial, Donnerson admitted that the murder had been so long ago that he could not remember exactly what he did or did not say in his statement to police on the night of the murder.
¶ 6. At Bailey's second trial, Pickens invoked his Fifth Amendment right against self-incrimination.[1] Thereafter, the transcript of Pickens's testimony given during the first trial was read into evidence. Pickens stated that he had seen Evans standing outside of his truck and talking to Bailey. Pickens stated that Bailey and Evans had started arguing, and that Evans had said certain provocative words to Bailey,[2] and had engaged in a "tussle" with Bailey. Pickens stated that after Evans "got the best of Deric," Evans ran and got into his truck, but that the driver's side door was ajar. Pickens stated that Bailey was blocking his (Pickens's) view of the inside of Evans's truck, but that Pickens saw Bailey shoot into the truck and the driver's side window glass "freeze up." Pickens stated that the truck door had remained ajar, and Evans had leaned over in his truck, which is when Bailey had fired his gun. Pickens stated that he did not know what had caused Bailey to shoot Evans.
¶ 7. Officer Jonathan Crawford was the first officer to arrive at the crime scene. Crawford could tell that Evans was injured, but he was still breathing. The doors to Evans's truck were locked, so Crawford broke the window glass to unlock the truck and provide Evans with medical help. After medical personnel arrived, Crawford turned his attention to securing the crime scene. Crawford found no gun or other type of weapon in Evans's truck.
¶ 8. Even though no drugs were found at the scene, Investigator Charles Taylor discovered Topps's Rolling Paper in Evans's truck. No alcohol or illicit drugs were *313 found in Evans's blood samples. Dr. Steven Hayne performed a gunshot residue test at Evans's autopsy, which showed that Evans likely had not fired a gun that day. Dr. Hayne testified that Evans's cause of death was a gunshot wound to the upper left chest, which resulted in massive internal bleeding. Dr. Hayne also opined that the manner of death was homicide. Dr. Hayne likewise noted that, during the autopsy, he had found a bruise on Evans's forearm, which he opined was sustained at or near the time of death. Ashley Moore, one of Bailey's coworkers at Rally's restaurant, testified that, while at work, Bailey had confessed to the shooting. This confession caused Moore to call Crimestoppers, which resulted in Bailey's arrest on May 15, 2002.
¶ 9. Bailey did not testify at either trial. However, at the first trial, Bailey's statement to the police after his arrest was admitted into evidence.[3] In his statement, Bailey claimed that Evans had approached him as he walked into the Short Stop and had asked Bailey to "serve him up," meaning to sell him crack cocaine or marijuana. Bailey claimed that Evans got angry when Bailey told him no, and that when Bailey exited the Short Stop, Evans still persisted in trying to buy drugs. Bailey claimed Evans then got in his truck and said certain provocative words to him, while pointing a gun in Bailey's direction. Bailey stated this caused him to pull out his own gun, which he carried to work for protection, and to shoot Evans through the driver's side window. Bailey stated that he then went to Evans's truck, picked up Evans's gun, and started walking home on Corinth Street. Bailey claimed that, once he started walking home on Corinth Street, he was joined by Pickens, who had arrived just after the shooting. Bailey stated that he had sold Evans's gun and had thrown his own gun into the Pearl River. Bailey's statement was excluded as evidence during the second trial because the trial court found that it was self-serving, reasoning that part of Bailey's defense theory was self-defense and that Bailey's statement was the only evidence indicating that Evans had pulled a gun on Bailey.
¶ 10. During a pretrial hearing on November 24, 2009, the trial court denied Bailey's motion to dismiss for failure to provide a speedy trial. The judge relied on the analysis in Johnson v. State, 9 So.3d 413 (Miss.Ct.App.2008), of the four-factor test for delay of trial previously announced in Barker v. Wingo, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972). The trial judge ruled that, even though the length of the delay weighed in Bailey's favor, the other three factorsreason for delay, defendant's assertion of his right to a speedy trial, and prejudice to the defendantdid not weigh in Bailey's favor.
¶ 11. At the same hearing, the trial court granted the State's motion in limine, which prohibited the defense from mentioning Bailey's post-arrest statement at any time during the trial. The trial judge found that the statement was self-serving, and because the State was not using any portion of the statement in its case-in-chief, the statement was inadmissible by the defense.
¶ 12. During a pretrial hearing on December 2, 2009, the trial court denied defense counsel's motion to withdraw for a conflict involving a potential witness, Pickens. In an effort to cure the possible conflict, the trial court appointed separate counsel to represent Pickens.
*314 ¶ 13. Once the trial commenced, both sides raised several objections regarding jury selection and jury instructions. The State raised a reverse Batson[4] challenge to the defense's striking of two white male jurors, while the defense made a Batson challenge based on the State's striking of two African-American female jurors. Concerning the jury instructions, the conflict centered around the trial court's allowing the State's deliberate-design murder instructions, but refusing Bailey's manslaughter and justifiable-homicide instructions.
¶ 14. On December 9, 2009, the jury returned a verdict of "guilty of murder as charged." The trial court sentenced Bailey to life imprisonment in the custody of the Mississippi Department of Corrections. On December 21, 2009, Bailey filed a motion for judgment notwithstanding the verdict (JNOV) or, in the alternative, for a new trial. From this order denying his post-trial motions, Bailey has appealed to us.

DISCUSSION
¶ 15. Bailey presents five issues for this Court's consideration: (1) whether the trial court erred in denying instructions D-6 and D-8 and giving instruction S-1;[5] (2) whether the trial court erred in excluding from evidence the statement Bailey gave at the time of his arrest; (3) whether the jury selection process was constitutionally infirm under Batson; (4) whether the trial court erred in denying Bailey's motion to dismiss for failure to grant a speedy trial; and (5) whether Bailey was deprived of his right to a fair trial, or at the very least, denied his right to a fair and impartial judge.

I. WHETHER THE TRIAL COURT ERRED IN DENYING INSTRUCTIONS D-6 AND D-8 AND GIVING INSTRUCTION S-1.
¶ 16. Bailey contends that the trial judge abused his discretion and deprived Bailey of his right to present his defense theory by denying Bailey's proposed jury instructions D-6[6] and D-8.[7] Bailey asserts *315 that, because the trial court denied these two instructions, the jury was denied its traditional right to weigh Bailey's defenses. Further, Bailey asserts that the trial judge denied the defense the right even to argue self-defense before the jury. Bailey claims the prejudice to the defense was extreme because the judge granted instruction S-1, which required the State to show that Bailey had acted "not in necessary self-defense."
¶ 17. While Bailey specifically points to the denial of instructions D-6 and D-8 along with the granting of S-1, Bailey's claim centers on the judge's ruling that Bailey had failed to prove a case for self-defense. While discussing the jury instructions, the State argued that the defense had failed to present evidence that would support any self-defense instructions and offered authority to support the State's position.
¶ 18. The trial judge relied on this Court's ruling in Phillips v. State, 794 So.2d 1034 (Miss.2001), which addressed self-defense and manslaughter instructions. In Phillips, this Court held that jury instructions must have a foundation in the evidence, and that mere words and disagreements alone are not enough for a manslaughter instruction. Id. at 1037-39. In today's case, the trial court conducted a detailed analysis of the evidence presented during the trial, found that the evidence was insufficient to support an instruction on self-defense, and denied instruction D-6.
¶ 19. In denying instruction D-8, the trial judge cited Turner v. State, 773 So.2d 952 (Miss.Ct.App.2000), and Phillips, 794 So.2d 1034. The trial court found that, because there was no evidence that Evans was carrying a weapon, or that punches were thrown between Bailey and Evans, the evidence in today's case did not "justify the rage, anger, hatred, furious resentment or terror" that would be required for a manslaughter instruction.
¶ 20. Jury instructions are generally within the discretion of the trial court and the settled standard of review is abuse of discretion. Newell v. State, 49 So.3d 66, 73 (Miss.2010) (citations omitted). "The instructions are to be read together as a whole, with no one instruction to be read alone or taken out of context." Young v. State, 891 So.2d 813, 819 (Miss. 2005) (citing Howell v. State, 860 So.2d 704, 761 (Miss.2003)). When read together, if the jury instructions fairly state the law of the case and create no injustice, then no reversible error will be found. Newell, 49 So.3d at 73 (citing Rubenstein v. State, 941 So.2d 735, 784-85 (Miss. 2006)). This Court has held that "[a] defendant is entitled to have jury instructions given which present his theory of the case; however, this entitlement is limited in that the court may refuse an instruction which incorrectly states the law, is covered fairly elsewhere in the instructions, or is without foundation in the evidence." Hearn v. State, 3 So.3d 722, 738 (Miss. 2008) (citing Chandler v. State, 946 So.2d 355, 360 (Miss.2006)). This Court has "repeatedly held that the accused is entitled to a lesser offense instruction only where there is an evidentiary basis in the record therefor. Such instructions should not be granted indiscriminately, nor on the basis of pure speculation." Jacobs v. State, 870 *316 So.2d 1202, 1209 (Miss.2004) (citing Wilson v. State, 639 So.2d 1326, 1329 (Miss. 1994)) (citations omitted).
¶ 21. In Phillips, 794 So.2d at 1035, the defendant was convicted of murder and appealed to this Court, claiming that the trial court had erred in refusing a manslaughter instruction and an imperfect self-defense instruction. The facts at trial revealed that Phillips and the decedent, Thornton, had been in a verbal argument and that Thornton had pushed Phillips's hand a couple of times during the argument. Id. at 1036. An eyewitness to the argument testified that the two men exchanged no punches and that Thornton pushed Phillips only a couple of times during the verbal argument. Id. Before the trial court, Phillips claimed that he was entitled to manslaughter and imperfect self-defense instructions because he "was in fear for his life or of great bodily harm because there had been testimony presented that [Thornton] was known to carry a gun." Id. at 1038. Phillips did not testify at trial, and no evidence was presented that Thornton was carrying a weapon. Id. In his argument on appeal, Phillips claimed that the following evidence provided a foundation for the instructions: (1) Phillips and Thornton never had problems prior to the confrontation; (2) Phillips had injuries on his face, and it should be inferred that they were caused by Thornton, who was a large individual; and (3) testimony revealed that Thornton often carried a pistol. Id.
¶ 22. Finding that the trial court did not err in refusing the instructions, this Court stated:
Based on the record, there is insufficient evidence to warrant a manslaughter instruction for either theory submitted by Phillips. The record does not reflect that [Thornton] was using deadly force against Phillips, but instead that [Thornton] pushed Phillips's hand a few times and Phillips pushed [Thornton] back. The evidence is not sufficient to show that [Thornton] was armed during the course of his argument with Phillips, and [an eyewitness] testified that the two were not physically fighting, but were having a verbal argument. The evidence is insufficient to rise to the level of reducing Phillips's murder charge to that of manslaughter, and for that reason, Phillips's conviction and life sentence should be affirmed.
Id. at 1038-39.
¶ 23. Recently, in Flowers v. State, 51 So.3d 911 (Miss.2011), this Court reversed the trial court's judgment, finding that the evidence warranted an instruction on the defense of necessity. At trial, Flowers testified that he had broken into a home because someone was trying to shoot him. Id. at 913. Flowers was insistent on cross-examination that someone was after him with a gun and that his only option was to break into the house. Id. Based on Flowers's testimony, this Court found that there was a foundation for the instruction on the defense of necessity. Id.
¶ 24. In Williams v. State, 53 So.3d 734 (Miss.2010), this Court reversed the defendant's conviction, finding evidence in the record that warranted an assisted-suicide instruction. The evidence included a statement by the defendant that he and the decedent had considered committing suicide together and testimony from third parties that the defendant and decedent had entered into a suicide pact. Id. at 742-43. In Banyard v. State, 47 So.3d 676 (Miss.2010), this Court also reversed the trial court's judgment, finding that the evidence warranted an instruction of duress. In Banyard, evidence was presented at trial that the thirteen-year-old defendant felt that he "could not change his mind once" a nineteen-year-old man had begun a plan to rob and kill a pizza-delivery man. Id. at 682. Banyard testified that he did *317 not want to kill the man, but that he was afraid of the nineteen-year-old, and that he looked "serious and mean." Id. Banyard also testified that he was afraid that the man would shoot him if he ran away. Id. at 683. This Court found that the evidence presented met the minimum threshold necessary to warrant a duress instruction. Id.
¶ 25. We find the facts of today's case are similar to those in Phillips, 794 So.2d 1034. Similar to the defendant in Phillips, Bailey now asserts on appeal that the decedent had a gun and that he was afraid for his life. However, no evidence was presented at Bailey's second trial that Evans had a gun. Bailey asks this Court to draw attenuated inferences from other evidence, including: Billy Donnerson's statement that after the gunshot, he had seen someone reach into Evans's truck as if to get something; Pickens's statement that he could not have seen whether Evans had a gun because Bailey was standing between Evans and himself; and Dr. Hayne's testimony that the bruise on Evans's arm occurred at or near the time of death. No evidence was presented at trial that demonstrated Bailey was afraid for his life or thought Evans had a gun.[8] The evidence Bailey presented is simply not enough to meet the threshold required to warrant the proffered instructions. Accordingly, we find that this issue is without merit.

II. WHETHER THE TRIAL COURT ERRED IN EXCLUDING FROM EVIDENCE THE STATEMENT BAILEY GAVE AT THE TIME OF HIS ARREST.
¶ 26. Bailey contends that the trial judge abused his discretion by excluding from evidence Bailey's statement to the police at the time of his arrest and thus denied Bailey the right to present a defense. The statement included an assertion from Bailey that Evans "was aiming a gun in my direction." When asked why he shot Evans, Bailey responded that it was "out of fear for my own life."
¶ 27. The State filed a pretrial motion in limine that would prohibit the defense from mentioning Bailey's post-arrest statement regarding what Bailey claimed had happened the night of the shooting. At the motion hearing, the State argued that the statement was self-serving and not admissible. In response to the State's motion, Bailey's attorney stated, "Your honor, we will contest [the motion], but we will concede that the precedent and the binding authority on this Court supports [the State's argument]."
¶ 28. On appeal, Bailey argues that his statement qualified as an exception to the hearsay rule under Mississippi Rule of Evidence 804(b)(3) as a statement against interest. Rule 804(b)(3) states:
(b) Hearsay Exceptions. The following are not excluded by the hearsay rule if the declarant is unavailable as a witness:
...
(3) Statement Against Interest. A statement which was at the time of its making so far contrary to the declarant's pecuniary or proprietary interest, or so far tended to subject him to civil or criminal liability, or to render invalid a claim by him against another, that a reasonable man in his position would not have made the statement unless he believed *318 it to be true. A statement tending to expose the declarant to criminal liability and offered to exculpate the accused is not admissible unless corroborating circumstances clearly indicate the trustworthiness of the statement.
There is no dispute that Bailey was an "unavailable witness" for purposes of the above rule, since Bailey invoked his Fifth Amendment right and did not take the stand. See Jacobs, 870 So.2d at 1207-08.
¶ 29. At the motion hearing in today's case, the trial court heavily relied upon Nicholson ex rel. Gollott v. State, 672 So.2d 744, 754 (Miss.1996), in which this Court stated:
[T]his issue concerns not the admission, but the failure to admit a piece of evidence. Gollott wished to have the tape of his confession played at trial, to show the extremely upset and remorseful demeanor he had, in an effort to show he did not intentionally kill Diane, and that it was an accident.
It is important to note that the State used no part of the taped interview at the trial, at all. Our case law states that the defendant is barred from introducing a statement made by the defendant immediately after the crime, if it is self-serving, and if the State refuses to use any of it. Tigner v. State, 478 So.2d 293, 296 (Miss.1985); Jones v. State, 342 So.2d 735, 736-37 (Miss.1977).
Id. at 754.
¶ 30. The trial court's ruling was correct, but for a different reason. Prior to our adoption of the Mississippi Rules of Evidence, the admissibility of a defendant's statement was analyzed under the concept of "self-serving" statements. Upon adoption of the Mississippi Rules of Evidence, those rules now control the admissibility of all evidence, and they say nothing about self-serving statements. Instead, our rules of evidence state that "[a]ll relevant evidence is admissible, except as otherwise provided by [constitutional provisions] or these rules." Miss. R. Evid. 402. So Bailey's statement that he shot Evans "out of fear for [his] own life" was admissible under Rule 402, unless excluded by some other rule of evidence. In this case, the rule that excludes Bailey's statement is Rule 802, which provides that "[h]earsay is not admissible except as provided by law."
¶ 31. So unless Bailey cites an exception to the rule against hearsay that applies, his statement is not admissible. He cites Rule 804(b)(3), which provides in pertinent part that "[a] statement tending to expose the declarant to criminal liability and offered to exculpate the accused is not admissible unless corroborating circumstances clearly indicate the trustworthiness of the statement." Bailey then argues the "trustworthiness" of his statement without first telling us how it tended to expose him to criminal liability. Rather than exposing him to criminal liability, Bailey's statement, if true, was his defense to criminal liability. See Robinson v. State, 758 So.2d 480, 487 (Miss.Ct.App. 2000) (statement sought to be admitted was a claim of self-defense, not a statement against interest, and therefore, the statement was not admissible under M.R.E. 804(b)(3)). We agree with the Court of Appeals' sound reasoning on this issue. Thus, we fail to see how Rule 804(b)(3) applies. This argument is without merit.

III. WHETHER THE JURY SELECTION PROCESS WAS CONSTITUTIONALLY INFIRM UNDER BATSON.

¶ 32. The defense made a Batson challenge when the State struck two African-American females from the jury venire. Because of the number of African-American *319 females who already had been selected, the trial court found no prima facie showing of discrimination. At that time, seven African-American jurors and two white jurors had been selected. Four of the seven African-Americans were female. Earlier in the jury-selection process, the State made a reverse Batson challenge, claiming that the defense had struck the first two white males. The defense provided a race-neutral reason for striking the first white male, and the trial court accepted the defense's reason. The defense claimed that the second male should be struck because, although he was a gun owner, he did not understand the concept of people owning guns only for self-defense or protection. The defense also claimed that, because this juror was an accountant, he would not be able to view all of the evidence as a whole. The trial court found that the defense did not provide a sufficient race-neutral reason for striking this juror, stating that several of the prospective jurors owned and carried guns for different reasons and that the juror being an accountant could benefit the defense, in that he would expect the State to prove each element of the offense beyond a reasonable doubt.
¶ 33. On appeal, Bailey contends that the trial judge abused his discretion in not finding that Bailey had presented a prima facie case concerning his Batson challenge and that the judge failed to follow proper procedure once Bailey had made his prima facie showing. Further, Bailey asserts that the trial judge abused his discretion by rejecting the race-neutral reasons offered by the defense in response to the State's reverse Batson challenge.
¶ 34. This Court employs the following standard when reviewing a trial court's ruling on a Batson challenge: "[A] trial court's determinations under Batson are accorded great deference because they are largely based on credibility.... This Court will reverse only when such decisions are clearly erroneous." Birkhead v. State, 57 So.3d 1223, 1229 (Miss.2011) (quoting Berry v. State, 802 So.2d 1033, 1037 (Miss.2001)) (other citations omitted).
¶ 35. When faced with a Batson challenge, the trial court should employ the following procedure:
First, the defendant must establish a prima facie case of discrimination in the selection of jury members. Berry v. State, 703 So.2d 269, 294 (Miss.1997) (citing Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986)). The prosecution then has the burden of stating a racially neutral reason for the challenged strike. If the State gives a racially neutral explanation, the defendant can rebut the explanation. Finally, the trial court must make a factual finding to determine if the prosecution engaged in purposeful discrimination. If the defendant fails to rebut, the trial judge must base his decisions on the reasons given by the State. Thorson v. State, 721 So.2d 590, 593 (Miss.1998).
Birkhead, 57 So.3d at 1229 (quoting Berry, 802 So.2d at 1037).

A. The Defense's Batson Challenge

¶ 36. The defense made a Batson challenge after the State struck two African-American females. After looking at the racial composition of the jurors who already had been selected, the trial judge determined that the defense had not made a prima facie case of discrimination. At the time the defense made its Batson challenge, nine jurors had been selected; seven were African-American and two were white. Of the seven African-Americans selected, four were female.
¶ 37. When deciding whether a defendant has made a prima facie case of *320 racial discrimination, "the trial court should consider all relevant circumstances." Batson, 476 U.S. at 96, 106 S.Ct. at 1712. As such, the trial judge in today's case considered that the majority of the jurors who had been selected were African-American and consequently decided that the defense had failed to make a prima facie case of discrimination on the part of the State. The record does not reveal the racial composition of the jurors selected after Bailey's Batson challenge.
¶ 38. The trial court did not abuse its discretion in finding that Bailey had failed to make a prima facie case of discrimination. Bailey challenged the State's striking of two African-American females, yet the majority of the jurors at the time of Bailey's challenge were African-American females. Accordingly, Bailey's argument is without merit.

B. The State's Reverse Batson Challenge

¶ 39. Bailey also contends that the trial court abused its discretion in not accepting the defense's reason for striking a white male juror. The defense claimed that it struck the juror because he was an accountant and a gun owner. The juror owned one gun that he used for hunting and another gun that he had inherited from his father. Bailey's attorney stated that the juror "seemed to be a person who doesn't understand the concept that people can just own guns for self protection in rough neighborhoods." With regard to the juror being an accountant, Bailey's attorney stated:
[A]ccountants tendand this is a categorical assumption, but we still stereotype accountants as people that like everything cabined off, and there needs to be a box for everything, and sometimes in a case there just isn't. And so when you have a person in the jury room that's going to need everything set and our defense can't have enough that way, we feel like his being an accountant is hurtful.
After the State responded to the defense's arguments, the trial court found that there was no indication that the juror was biased or prejudiced against people who carried guns for protection. The trial judge also noted that the juror being an accountant could weigh in favor of either side, stating: "that could cut both ways because they could find that the State had failed to prove beyond a reasonable doubt, which is, of course, a high burden, and an accountant would expect them to prove their case meticulously, so that could also work in favor of the defendant."
¶ 40. The reasons the defense provide for striking the white male juror were not accepted by the trial judge as valid, race-neutral reasons for striking a juror. The defense seemed to infer from the juror's response that because he used his guns for reasons other than self-defense, he would not relate to one who uses a gun for that reason. The defense also made the inference that, because the juror was an accountant, he would not be able to view the evidence presented as a whole. Again, this was no more than an inference that was not supported by the questions and responses during voir dire.
¶ 41. In sum, we find that this issue, both as to Bailey's Batson challenge, and Bailey's response to the State's reverse-Batson challenge, is without merit.

IV. WHETHER THE TRIAL COURT ERRED IN DENYING BAILEY'S MOTION TO DISMISS FOR FAILURE TO GRANT A SPEEDY TRIAL.
¶ 42. Bailey contends that the trial judge erred in denying his motion to dismiss for failure to provide a speedy *321 trial. The mandate in Bailey's Court of Appeals case was issued on March 22, 2007. Nine hundred and thirty-one days later, on October 8, 2009, at a pretrial status hearing, Bailey's counsel made an ore tenus motion to dismiss for failure to provide a speedy trial. On that same day, Bailey's trial was set for December 7, 2009. The trial court told Bailey's counsel that they would need to make a formal written motion to dismiss, and the motion was filed on October 26, 2009. On November 26, a pretrial hearing was conducted to determine the merits of this motion. The trial judge denied Bailey's motion.
¶ 43. Bailey's argument must be considered under the constitutional speedy-trial standards as laid out in Barker, 407 U.S. at 531, 92 S.Ct. 2182, because the 270-day rule in Mississippi Code Section 99-17-1 (Rev.2007) does not apply to retrial. Stevens v. State, 808 So.2d 908, 915 (Miss. 2002).
¶ 44. In Barker, the United States Supreme Court established a four-factor balancing test to be applied to determine if a defendant's right to a speedy trial has been violated: (1) length of the delay, (2) reason for the delay, (3) defendant's assertion of his right, and (4) prejudice to the defendant. Barker, 407 U.S. at 530, 92 S.Ct. 2182. These four factors should be weighed according to the facts of the case; no one factor is outcome-determinative. Thomas v. State, 48 So.3d 460, 475 (Miss. 2010) (citing Price v. State, 898 So.2d 641, 647 (Miss.2005)). In addition to the Barker factors, other circumstances may be considered in the balancing process. Thomas, 48 So.3d at 475 (citing Jefferson v. State, 818 So.2d 1099, 1106 (Miss.2002)).

A. Length of the delay
¶ 45. This Court has held that "the speedy trial clock begins to run for purposes of determining a violation of a defendant's right to speedy retrial on the date this Court reverses his first conviction." Duplantis v. State, 708 So.2d 1327, 1334 (Miss.1998) (citing State v. Ferguson, 576 So.2d 1252, 1254 (Miss.1991)). In today's case, the speedy-trial clock began to run on March 22, 2007, when the mandate was issued. Bailey was retried on December 7, 2009, a total of 991 daysor two years, eight months, and fifteen days after the reversal. A delay of eight months or longer is presumptively prejudicial. Smith v. State, 550 So.2d 406, 408 (Miss.1989). The delay in this case far exceeded the eight-month mark. As such, this factor weighs in favor of Bailey.

B. Reason for the Delay
¶ 46. If the delay is presumptively prejudicial, as it is in this case, the burden shifts to the State to produce evidence justifying the delay. Stevens, 808 So.2d at 916. "[T]hose delays which are not attributable to the defendant will count against the [S]tate, unless the prosecution can show good cause." Duplantis, 708 So.2d at 1335 (citing Vickery v. State, 535 So.2d 1371, 1377 (Miss.1988)).
¶ 47. The State claims that the reason for the delay was the confusion as to how a special prosecutor should be appointed. On January 8, 2009, the trial court entered an order to recuse the Hinds County district attorney because of a conflict. On October 8, 2009the same day as Bailey's ore tenus motionthe prosecutor and trial court discussed this confusion. Because of his conflict, the district attorney thought that the trial judge should appoint a special prosecutor. The trial court, on the other hand, thought that the district attorney should appoint the special prosecutor. Based on the colloquy between the trial court and the district attorney, it seems as if the nine-month delay between the recusal and the ore tenus motion stemmed *322 from this confusion. In Manix v. State, 895 So.2d 167, 175 (Miss.2005), this Court found that there was good cause for delay associated with appointing a new prosecutor. The defense counsel also moved for a ninety-day continuance to refamiliarize itself with the case after it was returned to the circuit court. This portion of the delay would be attributed to Bailey. The State, however, provided no reason for the 658-day delay between the mandate (March 22, 2007) and the district attorney's recusal (January 9, 2009). See Brengettcy v. State, 794 So.2d 987, 993 (Miss.2001) ("[W]here the record is silent as to the cause of a delay, this factor must weigh in favor of the defendant.")
¶ 48. Because the State failed to show good cause for the 658-day delay between the mandate and the district attorney's recusal, this factor also weighs in favor of Bailey, although there is no suggestion in the record that the State purposefully caused this delay to gain tactical advantage over or prejudice Bailey.

C. Assertion of Right to a Speedy Trial
¶ 49. It is well settled that the State bears the burden of bringing a defendant to trial. Stevens, 808 So.2d at 917. "Although the defendant has neither a duty nor an obligation to bring himself to trial, points are placed on his side of the ledger when . . . he has made a demand for a speedy trial." Id. (citing State v. Magnusen, 646 So.2d 1275, 1283 (Miss. 1994)).
¶ 50. This Court repeatedly has held that Section 99-17-1 does not apply to retrials, and that, in case of retrial, this Court reverts back to the constitutional standards as set out in Barker. See Stevens, 808 So.2d at 915. It is important that this distinction be made, because the trial judge in today's case analyzed Bailey's assertion of his right under the conditions used for the speedy-trial statute. Under the speedy-trial statute, this Court has held that "a defendant may effectively waive his right to complain of not being tried within the 270-day period . . . when the defendant does not request or assert his right to a speedy trial or object to a delay." Guice v. State, 952 So.2d 129, 142 (Miss.2007) (citing Walton v. State, 678 So.2d 645, 650 (Miss.1996)). The trial judge repeatedly applied this standard in his ruling, stating that Bailey had failed to file a motion or request a speedy trial, which the trial judge stated was a prerequisite for a motion to dismiss for lack of a speedy trial.
¶ 51. However, the correct standard for the defendant's assertion of his right was laid out by the Barker Court when it rejected the rule that a defendant who fails to demand a speedy trial waives his right, and instead stated that the defendant's assertion, or failure to assert his right, is one of the factors to be considered. Barker, 407 U.S. at 528, 92 S.Ct. 2182. Further, the Barker Court stated "[t]he defendant's assertion of his speedy trial right, then, is entitled to strong evidentiary weight. . . . We emphasize that failure to assert the right will make it difficult for the defendant to prove that he was denied a speedy trial." Id. at 531-32, 92 S.Ct. 2182.
¶ 52. Bailey first moved to dismiss the case for failure to provide a speedy trial on October 8, 2009931 days after the mandate was issued. He then filed a written motion asserting the same on October 26, 2009. Prior to October 8, 2009, Bailey made no attempt to demand a speedy trial or move for a dismissal.[9] "[A] *323 demand for a speedy trial is distinct from a demand for dismissal due to violation of the right to a speedy trial." Brengettcy, 794 So.2d at 994 (citing Perry v. State, 637 So.2d 871, 875 (Miss.1994)). See also Adams v. State, 583 So.2d 165, 169-70 (Miss.1991) (Demand for dismissal coupled with demand for instant trial is insufficient to weigh third Barker prong in defendant's favor where motion came after bulk of delay had elapsed.). Because Bailey never demanded a speedy trial and waited 931 days until he moved to dismiss the case for failure to provide a speedy trial, we find that this factor weighs in favor of the State.

D. Prejudice to the Defendant
¶ 53. Under the Barker test, prejudice "has two aspects: (1) actual prejudice to the accused in defending his case, and (2) interference with the defendant's liberty." Murray v. State, 967 So.2d 1222, 1232 (Miss.2007) (quoting Brengettcy, 794 So.2d at 994). When analyzing the last Barker factor, this Court should consider the following three interests: (1) preventing oppressive incarceration; (2) minimizing anxiety and concern of the accused; and (3) limiting the possibility that the defense will be impaired. Jenkins v. State, 947 So.2d 270, 277 (Miss.2006).
¶ 54. Bailey contends that he was prejudiced by his incarceration and impairment of his defense. First, Bailey contends that his defense was impaired by Billy Donnerson's diminished memory. After the shooting, Donnerson stated that he saw Bailey reach into Evans's truck as if he was taking something. During the second trial, Donnerson stated that he could not remember whether Bailey had reached into Evans's truck. But the State counters Bailey's argument by noting that Donnerson's statement was entered into evidence at the second trial, and the defense was able to impeach him with the contradictory statement.
¶ 55. Bailey also claims that he was prejudiced by the loss of an audiotape of Pickens's statement to police. Bailey asserts that the audiotape was important to his defense because Pickens had changed his statement of the events, and the audiotape would corroborate some of his previous statements, as well as Bailey's statements to police. The State points out that the admission of the audiotape was the reason that the Court of Appeals reversed Bailey's first conviction. See Bailey, 952 So.2d at 236-38 (holding that admission of the audiotape as substantive evidence of Pickens's prior statement was error). Also, the State points out that, while the audiotape is missing, a transcript of the tape recording exists.
¶ 56. At the motion hearing, the trial court found no actual prejudice. We agree. This Court in Ross v. State, 605 So.2d 17, 23 (Miss.1992), acknowledged the possibility of prejudice that would be inherent in an extended delay, such as diminished memories, inaccessible witnesses, and lost evidence. However, in Ross, this Court stated that "[t]he defendant must prove that this prejudice impaired a fair trial outcome; otherwise, such a claim is speculative." Id. (citing United States v. Marion, 404 U.S. 307, 325, 92 S.Ct. 455, 466, 30 L.Ed.2d 468 (1971)). Bailey is unable to offer any proof that the lost evidence or diminished memories like Donnerson's have impaired his ability to mount a defense or have impaired a fair-trial outcome. As to Bailey's claim of pretrial incarceration, this Court has held "[a] defendant's *324 assertion of prejudice attributable solely to incarceration, with no other harm, typically is not sufficient to warrant reversal." Ross, 605 So.2d at 23 (citing Williamson v. State, 512 So.2d 868, 877 (Miss.1987) (overruled on other grounds)). Accordingly, we find that this prong of the Barker analysis weighs in favor of the State.
¶ 57. Having reviewed the Barker factors, although two of the factors weigh in favor of Bailey, when considering the totality of the circumstances, we cannot say that the trial court erred by denying Bailey's motion. Bailey failed to demand a speedy trial and did not show that he was prejudiced by the delay. Accordingly, this issue is without merit.

V. WHETHER BAILEY WAS DEPRIVED OF HIS RIGHT TO A FAIR TRIAL OR, AT THE VERY LEAST, DENIED HIS RIGHT TO A FAIR AND IMPARTIAL JUDGE.
¶ 58. Bailey asserts that he was denied his right to a fair trial and a fair and impartial judge because the trial court allowed the Hinds County district attorney to recuse himself for an undisclosed conflict of interest involving a potential witness, but refused to grant defense counsel's motion to withdraw for a similar conflict of interest. Additionally, in his brief, Bailey states that the trial judge failed to cure the conflict. On December 1, 2009, defense counsel filed a motion to withdraw because counsel realized they were also representing a potential witness, James Bernard Pickens, who had an open arrest warrant and pending revocation proceedings. The following day, the trial judge conducted a hearing and made a lengthy inquiry into the alleged conflict of interest and possible remedies.
¶ 59. At the pretrial hearing, the defense argued that the conflict of interest was due to the fact that Pickens might be an adverse witness to Bailey, and they could not properly represent Bailey if they were also trying to protect the interests of their other client, Pickens. Further, defense counsel stated that there would be a conflict if Pickens was called as a witness, because they possibly would have to impeach him due to Pickens's felony status and the conflicting statements he had given, essentially claiming that they would have to "attack our own client."
¶ 60. The State asserted that it had no plans of calling Pickens as a witness, because Pickens had changed his statement several times. The State agreed that the judge's suggested remedy of appointing a separate attorney for Pickens solved any possible conflict, since Pickens would no longer be defense counsel's client. Also, the State pointed out that the information the defense would use to impeach Pickensan aggravated-assault convictionis public knowledge and not based on special information it received from representing Pickens. Rather than granting the defense counsel's motion to withdraw, the trial court appointed another defense attorney to represent Pickens.
¶ 61. Recently, in Kiker v. State, 55 So.3d 1060 (Miss.2011), this Court reversed and remanded a case because a defense attorney also represented one of the State's witnesses, and the attorneys and trial judge made no effort to cure the conflict. In Kiker, the attorneys and trial judge became aware of the conflict when the witness stated during his testimony that one of the defense attorneys represented him. Id. at 1064. In reversing Kiker's conviction, this Court stated: "The trial judge, the defense attorneys, and the prosecutor knew about the conflict, and all of them failed in their respective duties." *325 Id. at 1068. Unlike the attorneys in Kiker, the defense attorneys in today's case moved to withdraw from representation upon realizing that there was a conflict. In response to the defense's motion, the trial court in today's case appointed a new attorney to represent Pickens.
¶ 62. By appointing a new attorney to represent Pickens, the trial judge did not cure any potential conflict of interest; however, based on the record in today's case, no reversible error was committed. Pickens did not testify at Bailey's second trial. The State did not call Pickens as a witness, and there is nothing to indicate that defense counsel failed to call Pickens as a witness due to defense counsel's representation of Pickens in an unrelated criminal case. Even though Pickens had a new attorney, had the State called Pickens as a witness, defense counsel could have been compromised in their ability to fully cross-examine Pickens with information they may have gained in their attorney-client relationship with Pickens. See Miss. Rule Prof. Conduct 1.9(a)(b). But today, Bailey makes no such claim regarding a denial of his constitutional right to effective counsel, but instead claims that he was denied the right to have an impartial judge preside over his trial due to the trial judge's disparate treatment of defense counsel by not allowing them to withdraw as Bailey's counsel, after having earlier permitted the district attorney to withdraw "due to vague references of representation of an unnamed client." In considering Bailey's claim, he has failed to overcome the presumption that the trial judge in this case was impartial. In re Blake, 912 So.2d 907, 917 (Miss.2005) (citing McFarland v. State, 707 So.2d 166, 180 (Miss.1997)).
¶ 63. Accordingly, this issue is without merit.

CONCLUSION
¶ 64. Because the trial court committed no reversible error, we affirm the judgment of conviction and sentence entered against Deric Bailey by the Circuit Court for the First Judicial District of Hinds County.
¶ 65. CONVICTION OF MURDER AND SENTENCE OF LIFE IMPRISONMENT IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, AFFIRMED.
WALLER, C.J., RANDOLPH, LAMAR, CHANDLER, PIERCE AND KING, JJ., CONCUR. DICKINSON, P.J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY KITCHENS, J.
DICKINSON, Presiding Justice, dissenting:
¶ 66. After conceding that the first two Barker factors favor Bailey, the majority finds that the final two favor the State: (1) whether the defendant asserted his right; and (2) whether the delay prejudiced the defendant. The majority resolves this stalemate by considering the "totality of the circumstances" and finds that the State wins. But I find that three Barker factors favor Bailey and that his right to a speedy trial was violated.
¶ 67. First, the majority holds that because Bailey moved to dismiss his case, as opposed to demanding a speedy trial, he failed to assert his rightand the majority weighs this factor in the State's favor. But this Court has long held that a defendant has no duty to bring himself to trial.[10] *326 If a defendant does demand a speedy trial, however, "points are placed on his side of the ledger."[11] So if Bailey is not required to demand a speedy trialbut given credit if he doesit is illogical to hold that the failure to do so favors the State. Instead, as here, this factor remains neutral; it favors neither party.
¶ 68. Second, the majority holds that Bailey suffered no "actual prejudice" and that a defendant must prove that some prejudicesuch as lost evidence or diminished memoriesimpaired the outcome of the trial. Because Bailey was unable to offer proof of prejudice, the majority holds that this fourth factor favors the State. But as I stated in a previous dissent, a defendant is not required to make an affirmative showing of prejudice to win a Barker analysis.[12] And if an affirmative showing is not required, how can the failure to do so score points for the State? Proving actual prejudice, like demanding a speedy trial, adds points to a defendant's ledger; while the failure to do so benefits neither party.
¶ 69. But here, the prejudice factor is not neutral. Prejudice is presumed. Bailey's trial was delayed 931 daysa delay that, as the majority puts it, "far exceeds the eight-month mark"[13] when prejudice is presumed. And once presumed, it became the State's burden to rebut Barker's three prejudice interests.[14] The majority places this burden on Bailey, when it was actually on the State. And because the State failed to meet its burden, I find that three of the four Barker factors favor Bailey, and his constitutional right to a speedy trial was violated. Therefore, I would reverse.
KITCHENS, J., JOINS THIS OPINION.
NOTES
[1] During the first trial, Pickens testified in the State's case-in-chief. At the State's request, the trial court allowed the State to treat Pickens as a hostile witness and to examine Pickens on his prior unsworn statement to police. Bailey, 952 So.2d at 236. The Court of Appeals found that the trial court did not abuse its discretion in allowing the State to treat Pickens as a hostile witness, but that the trial court did commit reversible error in allowing Pickens's prior inconsistent statement to be received into evidence and considered by the jury as substantive evidence of Bailey's guilt. Id. at 236-38.
[2] Nothing would be added to this opinion by quoting Evans's words to Bailey.
[3] Bailey's statement was admitted in the second trial for identification purposes only.
[4] Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986).
[5] Bailey states in his issue statement that the trial court erred in giving instruction S-4. But instruction S-4 was withdrawn by the State and not given to the jury. In the body of his brief, Bailey contends that the trial court erred in giving instruction S-1. Thus, we will discuss S-1 rather than instruction S-4.
[6] Instruction D-6 reads:

The court instructs the jury that if you find from the evidence and testimony that the prosecution failed to prove by credible evidence beyond a reasonable doubt any of the elements of deliberate design murder, then you will find Deric Bailey "not guilty" of murder and continue your deliberations to determine if Deric Bailey is guilty or not guilty of the offense of justifiable homicide. Justifiable homicide is defined as:
(1) The killing of a human being by the act, procurement or omission of another shall be justifiable in the following cases:
(f) When committed in lawful defense of one's own person or any other human being, where there shall be reasonable ground to apprehend a design to commit a felony or to do some great personal injury, and there shall be imminent danger of such design being accomplished;
If you find Deric Bailey acted in self-defense, then you shall return a verdict of NOT GUILTY.
[7] Instruction D-8 reads:

The court instructs the jury that if you find from the evidence and testimony that the prosecution failed to prove by credible evidence beyond a reasonable doubt any of the elements of deliberate design murder, that you will find Deric Bailey "not guilty" of murder and continue your deliberations to determine if Deric Bailey is guilty or not guilty of the offense of manslaughter.
Manslaughter is defined as the killing of a human being, without malice, in the heat of passion, but in a cruel and unusual manner, or by the use of a dangerous weapon, without authority of law, and not necessary [sic] in self-defense.
Heat of passion is defined as a state of violent and uncontrollable rage engendered by a blow or some other provocation given, passion or anger suddenly aroused at the time by some immediate and reasonable provocation, by words or acts of one at the time, which will reduce a homicide from the grade of murder to that of manslaughter; the term includes an emotional state of mind characterized by anger, rage, hatred, furious resentment or terror.
If you find Deric Bailey acted in the heat of passion, then you shall find him "guilty" of manslaughter.
[8] In Bailey's first trial, his post-arrest statement was entered into evidence. In the statement, Bailey claimed that Evans had pointed a gun at him before he shot and killed Evans. Bailey then stated that he took Evans's gun and sold it to an unknown man. This statement was not entered into evidence at Bailey's second trial.
[9] Bailey contends in his brief that he "repeatedly sought to assert his right to a speedy trial throughout the period after his conviction was reversed, peppering the office of the trial judge with handwritten requests." The trial judge stated at the motion hearing that he received no requests from Bailey, and no requests are found in the record.
[10] State v. Magnusen, 646 So.2d 1275, 1283 (Miss.1994); Barker v. Wingo, 407 U.S. 514, 527, 92 S.Ct. 2182, 2190, 33 L.Ed.2d 101 (1972).
[11] Magnusen, 646 So.2d at 1283.
[12] Johnson v. State, 68 So.3d 1239, 1253 (Miss.2011) (citing Moore v. Arizona, 414 U.S. 25, 26, 94 S.Ct. 188, 38 L.Ed.2d 183 (1973)).
[13] Maj. Op. at ¶ 45.
[14] Barker, 407 U.S. at 532, 92 S.Ct. 2182. ((1) oppressive pretrial incarceration; (2) anxiety and concern of the accused; and (3) impairment of the defendant's defense).