# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2021-KA-00336-SCT

*COURTNEY WILLIAMS*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 04/19/2021 |
| TRIAL JUDGE: | HON. BARRY W. FORD |
| COURT FROM WHICH APPEALED: | YAZOO COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | KEVIN D. CAMP |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: ALEXANDRA ROSENBLATT |
| DISTRICT ATTORNEY: | AKILLIE MALONE OLIVER |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | REVERSED AND REMANDED - 07/21/2022 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE KING, P.J., MAXWELL AND GRIFFIS, JJ.**

**GRIFFIS, JUSTICE, FOR THE COURT:**

¶1. Courtney Williams appeals her manslaughter conviction. Because the trial court erroneously refused Courtney's proposed jury instructions related to her right to stand her ground, her conviction and sentence are reversed, and the case is remanded for a new trial.

## FACTS AND PROCEDURAL HISTORY

¶2. James Williams, his pregnant daughter Courtney, and Courtney's two children lived with James at James's residence. James had recently allowed Courtney's boyfriend, Cymonde "CJ" Sailer, to move in with them.

¶3. On the night of September 1, 2019, Courtney, her daughter, and CJ were in Courtney's

bedroom watching television. Between 10:30-11:00 p.m., James discovered that CJ had fallen asleep in Courtney's bed despite an agreement that CJ would sleep in Courtney's son's bedroom across the hall. An altercation occurred between James and Courtney. During the altercation, Courtney stabbed James twice in the back.

¶4.     After Courtney stabbed James, James got up, left the house, and called 911. Courtney also called 911. The 911 operator advised Courtney to go to the nearest gas station and await law enforcement.

¶5.     When law enforcement officers arrived, Courtney advised that her father had attacked her and that she had stabbed her father in the back. One of the law enforcement officers then left to check on James. James was found deceased inside of his vehicle outside of his residence. He was in the driver's seat, leaned over with his head down. There was blood coming out of his mouth and on the back of his shirt.

¶6.     Dr. Christopher Gordon, a forensic pathologist, performed an autopsy. Dr. Gordon noted that James's blood-alcohol level was .14, "about one and [one-]half times the legal limit." Dr. Gordon further noted several abrasions on the left side of James's face and two stab wounds on his back. Dr. Gordon opined that the cause of death was "stabbing of the torso" and that the manner of death was homicide.

¶7.     Courtney was indicted and charged with the first-degree murder of James. At trial, Courtney and CJ both testified, and each explained that Courtney and James had gotten into an argument over the fact that CJ was sleeping in Courtney's bedroom. According to both Courtney and CJ, during the argument, James choked Courtney. When CJ attempted to break

up the altercation, James hit CJ, causing CJ to fall. James then got on top of CJ, pinning CJ to the ground. Courtney went into the kitchen and grabbed a knife. She then went back to the bedroom and stabbed James twice in the back while James was on top of CJ.

¶8. Courtney admitted to stabbing her father but testified that she did so in defense of herself and others. Courtney stated she was scared and feared James would come after her again as soon as he got off of CJ. According to Courtney, she had "lived with [James] [her] whole life [and] knew what he was capable of." Courtney acknowledged that at the time she stabbed James, James was not attacking her. Courtney agreed that she stabbed James in an effort to "get him off of CJ." She explained that she "never meant to kill [James]," that she was "just trying to stop him."

¶9. Like Courtney, CJ testified that he was scared. But despite his fear, CJ stated he did not think James was going to kill him.[1] In fact, CJ testified that at the time Courtney stabbed James, James was not a threat to him or Courtney. Notably, CJ admitted that he had told law enforcement that he did not know why Courtney stabbed her father since James was not a threat.

¶10. The jury heard the recorded 911 calls from both Courtney and James. Courtney's statement to the 911 operator differed from her and CJ's trial testimony. Specifically, Courtney advised the 911 operator that James hit her and that she had to stab James in order to get him off of her. Courtney did not say anything to the 911 operator about an attack on CJ.

---

[1] CJ explained that James did not have a gun or a knife.

3

¶11.   Courtney was convicted of manslaughter.  She was sentenced to twenty years in the custody of the Mississippi Department of Corrections, with fifteen years to serve, five years suspended, and five years of supervised probation.  Courtney filed a motion for judgment notwithstanding the verdict or, alternatively, a motion for new trial, which the trial court denied.

¶12.   Courtney timely appealed.  On appeal, Courtney argues (1) the trial court erred by refusing certain jury instructions, and (2) the trial court erred by denying her motion for judgment notwithstanding the verdict.

## DISCUSSION

*I.    Whether the trial court erred by refusing certain jury instructions.*

¶13.   Courtney argues the trial court erred by refusing Proposed Jury Instructions D-15, D-16, D-17, and D-20 regarding justifiable homicide.  Courtney asserts she is entitled to instructions that support her theory of the case.  She claims that the trial court's failure to give the instructions undermined her defense.

¶14.   The refusal of a jury instruction is "within the discretion of the trial court[,] and the settled standard of review is abuse of discretion."  *Nelson v. State*, 284 So. 3d 711, 716 (Miss. 2019) (internal quotation mark omitted) (quoting *Bailey v. State*, 78 So. 3d 308, 315 (Miss. 2012)).  "[T]he instructions actually given must be read as a whole. When so read, if the instructions fairly announce the law of the case and create no injustice, no reversible error will be found."  *Newell v. State*, 49 So. 3d 66, 73 (Miss. 2010) (quoting *Rubenstein v. State*, 941 So. 2d 735, 785 (Miss. 2006)).  Nonetheless, this Court has held that "a defendant is

4

entitled to have every legal defense he asserts to be submitted as a factual issue for determination by the jury under proper instruction of the court." ***Giles v. State***, 650 So. 2d 846, 849 (Miss. 1995) (quoting ***Hester v. State***, 602 So. 2d 869, 872 (Miss. 1992)).

### *A. Proposed Jury Instructions D-15 and D-20*

¶15. Proposed Jury Instruction D-15 provided:

> A person who is not the initial aggressor and is not engaged in unlawful activity shall have no duty to retreat before using deadly force, if the person is in a place where the person has a right to be, and no finder of fact shall be permitted to consider the person's failure to retreat as evidence that the person's use of force was unnecessary, excessive or unreasonable.

¶16. Proposed Jury Instruction D-20 provided:

> While the danger that justifies one person taking another person's life must be immediate, pending and present, such danger does not need to be unavoidable except by killing in self-defense. The defendant is not required to flee from the danger to her body or life.
>
> If Courtney Williams was in a place where she had a right to be and she was not the initial aggressor or provoker, then the defendant has no duty to flee or retreat and she has the right to stand her ground.

¶17. Proposed instructions D-15 and D-20 track the language of Mississippi Code Section 97-3-15(4) (Rev. 2020). Under Section 97-3-15(4), if the defendant is in a place where he has a right to be, is not the immediate provoker and aggressor, and is not engaged in unlawful activity, he has no duty to retreat before using defensive force. Miss. Code Ann. § 97-3-15(4).

¶18. But while the no-duty-to-retreat rule was codified in Section 97-3-15(4), "[i]t has always been the law in this state that a defendant is not deprived of the right to claim self-defense in a slaying even if he could have avoided the threat to his safety by fleeing."

5

*Haynes v. State*, 451 So. 2d 227, 229 (Miss. 1984). Indeed, this Court has explained:

> Flight is a mode of escaping danger to which a party is not bound to resort, so long as he is in a place where he has a right to be, and is neither engaged in an unlawful, nor the provoker of, nor the aggressor in, the combat. In such case he may stand his ground and resist force by force, taking care that his resistance be not disproportioned to the attack.

*Id.* (quoting *Long v. State*, 52 Miss. 23, 34 (1876)). "Whenever, from the facts of the case, it appears that the defendant could have avoided the fatal difficulty only by precipitous retreat, but did not leave, if the other requisite factors are present as stated in *Long*, supra, then the defendant is entitled to such an instruction." *Haynes*, 451 So. 2d at 229.

¶19. Here, the record reflects that Courtney was not the initial aggressor. Both Courtney and CJ testified that James attacked Courtney. James and Courtney had an argument over CJ's sleeping in Courtney's bedroom. Although words were exchanged between both Courtney and James, it was James who first attacked Courtney by choking her. The record further reflects that Courtney was not engaged in unlawful activity and that she had a right to be in the home. Courtney testified that she lived with her father at her father's house. She explained that although James owned the house, she paid rent and had lived in the house since it was built. Thus, under Section 97-3-15(4), it appears the jury should have been instructed that Courtney had "no duty to retreat before using defensive force" but, instead, had the right to stand her ground. Miss. Code Ann. § 97-3-15(4).

¶20. The State argues that proposed instructions D-15 and D-20 were properly refused because they were "fairly covered in other instructions" and "lacked an evidentiary foundation." The three justifiable homicide instructions given by the trial court were as

follows:

### Jury Instruction No. 7

The Court instructs the jury that if you find the stabbing of James Williams was committed by Courtney Williams in the lawful defense of herself, or of another person, where there was reasonable ground to apprehend a design to do some great personal injury or to commit a felony upon [her person, or of another person], and there was imminent danger of such design being accomplished, then such stabbing was justifiable.

### Jury Instruction No. 8

The Court instructs the jury that to make a killing justifiable on the grounds of self defense, the danger to the defendant must be either actual, present and urgent, or the defendant must have reasonable grounds to believe that the victim intended to kill the defendant or to do him some great bodily harm, and in addition to this, he must have reasonable grounds to believe that there is imminent danger of such act being accomplished. It is for the jury to determine the reasonableness of the grounds upon which the defendant acts. If you, the jury, unanimously find that the defendant acted in self-defense, then it is your sworn duty to return a verdict in favor of the defendant.

### Jury Instruction No. 9

The Court instructs the jury that one who claims self-defense as a defense to his actions may not use excessive force to repel the attack, but may use only such force as is reasonably necessary under the circumstances. If you find from the evidence, beyond a reasonable doubt, that the defendant, COURTNEY WILLIAMS, used more force than was reasonably necessary under the circumstances, then the defendant may not use self-defense as a defense to his actions.

¶21. In support of its argument, the State relies on *Spires v. State*, 10 So. 3d 477 (Miss. 2009). But *Spires* is distinguishable.

¶22. In *Spires*, none of the jury instructions explicitly referred to Spires's right to stand his ground. *Id.* at 484. Nevertheless, this Court found Spires's proposed stand-your-ground instruction was "covered fairly elsewhere in the instructions[.]" *Id.* Additionally, the Court

7

found there was no factual basis for the stand-your-ground instruction because "nothing in Spires's testimony . . . suggest[ed] to a reasonable juror that he ever had an opportunity to retreat from the fight." *Id.* at 485. Instead, Spires testified that "he had no opportunity to escape the fight[.]" *Id.* As a result, the Court held that the trial court did not err by refusing the instruction. *Id.*

¶23. Similarly, in *Thomas v. State*, although "none of the instructions specifically referred to Thomas's right to stand her ground," the Court of Appeals found "the instructions given fairly covered Thomas's right." *Thomas v. State*, 145 So. 3d 687, 694 (Miss. Ct. App. 2013). The court further found no evidentiary basis for the instruction. *Id.* Specifically, the court held,

> Although Thomas did not specifically say she did not have the opportunity to flee, her testimony indicates that under her version of events, she could not have retreated and avoided the conflict. Thus, there was no factual basis for the stand-your-ground instruction and nothing in Thomas's testimony that would suggest to a reasonable juror that she ever had an opportunity to retreat from the fight. As a result, the jury instruction was not supported by the evidence.

*Id.*

¶24. Here, like *Spires* and *Thomas*, none of the instructions explicitly refer to Courtney's right to stand her ground. The State asserts that because the jury was instructed that Courtney had a right to defend herself and others, this "implicitly instructed the jury that [Courtney] had a right to stand and fight." But there is nothing in the given instructions that explained to the jury that Courtney had no duty to retreat if given the opportunity. Instead, the instructions simply instructed the jury that Courtney's actions were justifiable if "committed by Courtney . . . in the lawful defense of herself or of another person[.]"

8

¶25. Additionally, here, unlike in *Spires* and *Thomas*, there is a factual basis for the instructions. Again, Courtney was in a place where she had a right to be, she was not the immediate provoker and aggressor, and she was not engaged in unlawful activity. Miss. Code Ann. § 97-3-15(4). Thus, under Section 97-3-15(4), Courtney had no duty to retreat before using defensive force. *Id.* While the record reflects that Courtney had the opportunity to retreat and could have retreated to avoid the conflict, she stood her ground to defend CJ.

¶26. In *Sanders v. State*, the Mississippi Court of Appeals found that the trial court erroneously refused a jury instruction negating a duty to retreat. *Sanders v. State*, 77 So. 3d 497, 502 (Miss. Ct. App. 2011), *cert. granted*, 69 So. 3d 767 (Miss. 2011) (table), *aff'd*, 77 So. 3d 484 (Miss. 2012). In *Sanders*, Sanders was convicted of her husband's murder. *Id.* at 499. At trial, Sanders had "proceeded on a theory of self-defense and defense of others." *Id.* On appeal, the court found that Sanders was not the initial aggressor, she was not engaged in unlawful activity, and she had a right to be in her home. *Id.* at 503. Importantly, the court noted,

> At trial, the prosecution repeatedly attempted to elicit testimony from Sanders on cross-examination regarding her ability to exit the home during the attack. On at least one occasion, the prosecution blatantly said to Sanders: "There's a door right there, a front door right there . . . you could have went [sic] out that door, correct?" As such, the jury was completely unaware that Sanders did not have a duty to retreat from her home, but instead, she had the right to remain in her home and defend herself and her children to whatever degree necessary to avoid the great bodily harm and imminent death that Sanders testified she feared from [the defendant]. Furthermore, due to the prosecution's pointed statements regarding Sanders's ability to retreat, the jury was, in fact, directed to note that Sanders may have been able to escape through an exit door of the home.

*Id.* (first alteration in original).

9

¶27. The court held,

> Without being informed of the rights Sanders possessed . . . , either through jury instruction D-9 or another informative instruction, the jury was improperly allowed to consider Sanders's failure to retreat as evidence that her use of force was unnecessary, excessive, or unreasonable. We find that the trial judge's refusal to grant a jury instruction . . . constituted reversible error.

*Id.*

¶28. Here, as in ***Sanders***, the State "repeatedly attempted to elicit testimony from [Courtney] on cross-examination regarding her ability to exit the home during the attack." *Id.* Indeed, the record reflects that the State suggested that Courtney could have "gone out the door that is right beside the kitchen," but instead "came back" with a "large knife" and "plunged it in [her] father's back." When Courtney testified that she was scared, the State responded, "[b]ut you weren't so scared that you didn't run out of the door." Later, the State again suggested that Courtney "could have r[u]n" and "could have exited the door if she felt her life was in danger." Moreover, Investigator Terry Gann testified that Courtney "could have fled" and that in his opinion she had a duty to flee.[2]

¶29. As in ***Sanders***, the jury was not instructed of Courtney's rights to stand her ground under Section 97-3-15(4). As a result, the jury could have "consider[ed] [Courtney]'s failure to retreat as evidence that her use of force was unnecessary, excessive, or unreasonable." *Id.*

¶30. This Court finds the trial court abused its discretion by refusing Courtney's proposed jury instructions D-15 and D-20. The jury should have been instructed that Courtney had no duty to retreat and that she had the right to stand and fight if she reasonably believed that she

___

[2] Specifically, Investigator Gann was asked, "Does [Courtney] have to flee? Does she?" He responded, "I would say so, yeah."

10

or others were in danger of death or great bodily harm. When read together as a whole, the instructions do not fairly announce the law of the case and create an injustice. *Newell*, 49 So. 3d at 73 (quoting **Rubenstein**, 941 So. 2d at 785). Accordingly, Courtney's conviction and sentence are reversed, and this case is remanded for a new trial consistent with this opinion.[3]

## CONCLUSION

¶31.　The trial court abused its discretion by refusing Courtney's proposed jury instructions under Section 97-3-15(4). Consequently, Courtney's conviction and sentence are reversed, and this case is remanded for a new trial consistent with this opinion.

¶32.　**REVERSED AND REMANDED.**

　　**RANDOLPH, C.J., KITCHENS AND KING, P.JJ., COLEMAN, MAXWELL, BEAM, CHAMBERLIN AND ISHEE, JJ., CONCUR.**

---

[3] Because we find reversible error, we decline to address the remaining issues.